TIMOTHY P. CRUDO (State Bar No. 143835)
REES F. MORGAN (State Bar No. 229899)
DANIEL M. BRUGGEBREW (State Bar No. 307037)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email:  ef-tpc@cpdb.com
        ef-rfm@cpdb.com
        ef-dmb@cpdb.com

Attorneys for Petitioner Paul McLinko

ETHAN A. BALOGH (State Bar No. 172224)
COLEMAN & BALOGH LLP
235 Montgomery Street, Suite 1070
San Francisco, California 94104
Telephone: 415.391.0440
Email:  eab@colemanbalogh.com

BRETT D. KELLEY (*pro hac vice forthcoming*)
KELLEY, WOLTER & SCOTT, P.A.
Centre Village Offices
431 S. Seventh Street, Suite 2530
Minneapolis, Minnesota 55415
Telephone: 612.200.2866
Email:  bkelley@kelleywolter.com

Attorneys for Petitioner Claudia Russ Anderson

**FILED JUL 22 2020** — SUSAN Y. SOONG, CLERK, U.S. DISTRICT COURT, NORTH DISTRICT OF CALIFORNIA

Case No. CV20-80125 MISC JCS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| Paul McLinko and Claudia Russ Anderson,<br><br>    Petitioners,<br><br>    v.<br><br>Accenture LLP,<br><br>    Respondent. | **NOTICE OF PETITION AND PETITION FOR ORDER REQUIRING COMPLIANCE WITH DOCUMENT SUBPOENA ISSUED PURSUANT TO 12 U.S.C. § 1818 AND 12 C.F.R. § 19.26**<br><br>*Filed concurrently with the Declaration of Daniel M. Bruggebrew* |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

16779.001 4832-0053-4468.2

Case No.

PETITION FOR ORDER REQUIRING COMPLIANCE WITH DOCUMENT SUBPOENA

# TABLE OF CONTENTS

Page

NOTICE OF PETITION ................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I. INTRODUCTION ...............................................................................................................1

II. JURISDICTION AND VENUE..........................................................................................2

III. INTRADISTRICT ASSIGNMENT ....................................................................................3

IV. RELEVANT BACKGROUND...........................................................................................3

V. LEGAL STANDARD .........................................................................................................7

VI. ANALYSIS .........................................................................................................................8

    A. Petitioners Have Established a *Prima Facie* Case for an Order
       Compelling Accenture to Comply with the Subpoena................................................8

    B. Because Accenture Failed to Exhaust Its Administrative Remedies,
       This Court Is Precluded from Considering Any Merit-Based Challenge
       to the Subpoena .........................................................................................................10

    C. The Subpoena Is Reasonable....................................................................................11

VII. CONCLUSION .................................................................................................................13

VIII. CIVIL LOCAL RULE 5-1(I)(3) CERTIFICATION .........................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*EEOC v. Children's Hospital Medical Center of Northern California,*
 719 F.2d 1426 (9th Cir. 1983)......................................................................................6, 8

*Easton v. Wells Fargo & Co.,*
 No. 20-CV-02193-HSG, 2020 WL 3639934 (N.D. Cal. July 6, 2020)...........................3

*EEOC v. Lutheran Social Services,*
 186 F.3d 959 (D.C. Cir. 1999)....................................................................................9, 10

*Fosselman v. Caropreso,*
 No. C 09-0055 PJH PR, 2011 WL 999549 (N.D. Cal. Mar. 18, 2011)........................10

*Henderson v. United States,*
 815 F.2d 1189 (8th Cir. 1987)........................................................................................10

*Josephs v. Harris Corp.,*
 677 F.2d 985 (3d Cir. 1982)...........................................................................................10

*Kleiman v. Wright,*
 No. 18-CV-80176, 2020 WL 1849407 (S.D. Fla. Apr. 13, 2020).................................11

*NLRB v. Cable Car Advertisers, Inc.,*
 319 F. Supp. 2d 991 (N.D. Cal. 2004) ...................................................................6, 8, 10

*NLRB v. North Bay Plumbing, Inc.,*
 102 F.3d 1005 (9th Cir. 1996).........................................................................................6

*NLRB v. Uber Technologies, Inc.,*
 216 F. Supp. 3d 1004 (N.D. Cal. 2016) ................................................................. *passim*

*Prudential Insurance Co. v. Lai,*
 42 F.3d 1299, 1303 (9th Cir. 1994).................................................................................6

*United States v. Smith,*
 454 F.3d 707 (7th Cir. 2006)..........................................................................................11

*In re Vargas,*
 723 F.2d 1461 (10th Cir. 1983).....................................................................................11

/ / /

/ / /

/ / /

**Statutes & Rules**

12 U.S.C. § 1818 ..................................................................................................................2, 7

12 U.S.C. § 1818(n) ...........................................................................................................2, 3, 7

12 U.S.C. § 1828(x) ..................................................................................................................11

Civil Local Rule 3-2(c) ..............................................................................................................3

**Other Authorities**

12 C.F.R. § 19.23 ....................................................................................................................5, 9

12 C.F.R. § 19.23(a)(2) ...............................................................................................................9

12 C.F.R. §19.25(d) ....................................................................................................................9

12 C.F.R. § 19.25(d)(1) ........................................................................................................2, 5, 9

12 C.F.R. § 19.26 .......................................................................................................................7

12 C.F.R. § 19.26(a)(1) ..............................................................................................................7

12 C.F.R. §19.26(b) ...................................................................................................................9

12 C.F.R. § 19.26(b)(1) ..............................................................................................................5

12 C.F.R. § 19.26(b)(2) ..........................................................................................................2, 9

12 C.F.R. § 19.101 .................................................................................................................2, 7

12 C.F.R. § 1813(q)(1)(A) .........................................................................................................7

12 C.F.R. § 1818(i) ....................................................................................................................7

12 C.F.R. § 1818(b) ...................................................................................................................7

12 C.F.R. § 1818(e) ...................................................................................................................7

12 C.F.R. § 1818(e)(4) ..............................................................................................................7

56 Fed. Reg. 38024, 38024, 38035 (1991) ...............................................................................7

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

TO ACCENTURE LLP AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on a date and time to be determined by the Court, Petitioners Paul McLinko and Claudia Russ Anderson will and hereby do petition this Court for an order requiring compliance with the April 28, 2020 Discovery Subpoena *Duces Tecum* (the "Subpoena") issued in the enforcement action filed by the Office of the Comptroller of the Currency ("OCC") captioned *In re Tolstedt et al.*, OCC Nos. AA-EC-2019-82, -81, -70, -71, -72 (consolidated).

This Petition is made upon the following grounds: Petitioners are two of five respondents in *In re Tolstedt*, which was initiated pursuant to 12 U.S.C. § 1818 by an OCC Notice of Charges filed on January 23, 2020. In the ensuing administrative proceedings, the presiding Administrative Law Judge issued the Subpoena to Accenture LLP ("Accenture"), which subpoena has not been and, by regulation, now cannot be quashed or modified. By way of this Petition, Petitioners seek an order from this Court requiring Accenture's compliance with the Subpoena. *See* 12 U.S.C. § 1818(n); *see also* 12 C.F.R. § 19.26(c).

This Petition is based on this Notice of Petition, the Memorandum of Points and Authorities in support thereof, the Declaration of Daniel M. Bruggebrew filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Petitioners are respondents in one of the largest bank regulatory enforcement actions against individuals in recent U.S. history, a case arising out of allegations relating to sales practices at Wells Fargo & Company ("Wells Fargo" or the "Bank"). On April 28, 2020, Office of Financial Institution Adjudication ("OFIA") Administrative Law Judge Christopher B. McNeil issued the Subpoena to Accenture. The Subpoena directed Accenture to produce documents relating to Accenture's 2015 assessment of sales practices in Wells Fargo's Community Bank, a critical, timely assessment that goes to the heart of the allegations made in the enforcement

16779.001 4832-0053-4468.2     1     Case No.
**PETITION FOR ORDER REQUIRING COMPLIANCE WITH DOCUMENT SUBPOENA**

action. *See* Bruggebrew Decl., Ex. A.

Accenture filed responses and objections to the Subpoena (the "Responses and Objections") on May 11, 2020. Bruggebrew Decl. ¶ 5, *see id.*, Ex. B. After nearly five weeks of meet-and-confer efforts, Accenture took the position that the Parties were "likely at an impasse" and refused to produce any documents. *See id.*, Ex. F at 2–3. Respondents then filed a response to Accenture's Responses and Objections, noting that by regulation Accenture had failed to file a timely motion to quash or modify and therefore had waived its objections to the Subpoena. *Id.*, Ex. D at 1–2 (citing 12 C.F.R. § 19.26(b)(2)). In the ensuing order Judge McNeil agreed, finding that Accenture failed to file the required motion, concluding that no relief was "warranted" or "forthcoming," and directing Petitioners to seek relief in an appropriate United States district court. Bruggebrew Decl., Ex. E at 3–4.

The Subpoena was properly issued, the appropriate procedures were followed in the administrative proceeding, and the evidence called for by the Subpoena is both relevant and material to that proceeding. As Judge McNeil correctly identified, a United States district court is the only forum authorized by Congress to resolve disputes like the one between Petitioners and Accenture. 12 U.S.C. § 1818(n); *see* Bruggebrew Decl., Ex. E at 3–4.

Deadlines in the underlying administrative action are looming: Petitioners are required to file witness lists by August 4, 2020, and the deadline to notice depositions is September 11, 2020. Bruggebrew Decl. ¶ 15. Petitions need prompt discovery from Accenture to allow them to identify witnesses and obtain other information needed to defend themselves. The Court should compel Accenture to produce the documents required by the Subpoena.

## II. JURISDICTION AND VENUE

This Court has jurisdiction, and this District is an appropriate venue, to hear this Petition pursuant to 12 U.S.C. § 1818(n).

Judge McNeil has been designated to conduct a hearing pursuant to 12 U.S.C. § 1818 to adjudicate charges set forth in the January 23, 2020 Notice of Charges filed by the enforcement

division of the OCC.[1]  In that capacity, Judge McNeil possesses the authority to issue subpoenas *duces tecum*. 12 U.S.C. § 1818(n). That section further provides that any party to *In re Tolstedt* may apply to "the United States district court for the judicial district . . . where the witness . . . carries on business, for enforcement of" any subpoena issued by Judge McNeil, "and such courts shall have jurisdiction and power to order and require compliance therewith." *Id.*

Petitioners are two of five respondents in *In re Tolstedt*. *See* Notices of Charges at 1.

Accenture is a multinational professional services company that carries on business in San Francisco, California. *See* Bruggebrew Decl., Ex. C.

All relevant conditions of 12 U.S.C. § 1818(n) having been met, this Court has jurisdiction to adjudicate this Petition and this District is an appropriate venue.

## III. INTRADISTRICT ASSIGNMENT

This action should be assigned to the San Francisco Division of this District. Pursuant to Civil Local Rule 3-2(c), "[a] civil action arises in the county in which a substantial part of the events . . . which give rise to the claim occurred . . . ." The Subpoena seeks documents relating to services provided by Accenture to Wells Fargo in mid-2015 pursuant to an agreement ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. *See* Bruggebrew Decl. Ex. A at 8–10; *see also id.*, Ex. C at 13. The agreement confirmed that ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ (*id.*, Ex. C at 8); Wells Fargo's headquarters are also located in San Francisco. *See Easton v. Wells Fargo & Co.*, No. 20-CV-02193-HSG, 2020 WL 3639934, at *1 (N.D. Cal. July 6, 2020) ("[Wells Fargo & Company] is . . . headquartered in San Francisco."). In sum, a substantial part of the events giving rise to the Subpoena took place in the City and County of San Francisco.

## IV. RELEVANT BACKGROUND

In mid-2015, the Bank engaged Accenture to assess its Community Bank's approach to

---

[1] Notice of Charges, *In re Tolstedt et al.*, OCC Nos. AA-EC-2019-82, -81, -70, -71, -72 (consolidated), *available at* https://www.occ.gov/static/enforcement-actions/eaN20-001.pdf; *see* 12 C.F.R. § 19.101 ("[OCC] administrative adjudications . . . shall be conducted by an administrative law judge assigned to OFIA.").

sales practices (the "Engagement"). Bruggebrew Decl., Ex. A at 8; *see also id.*, Ex. C at 2. To that end, Accenture ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id.*, Ex. C at 3, 11. In April 2017, the Bank's Board's Independent Directors issued its *Sales Practice Investigation Report* (the "Board Report"), which relied in part on Accenture's findings. Sales Practices Investigation Report, *available at* https://www08.wellsfargomedia.com/assets/pdf/about/investor-relations/presentations/2017/board-report.pdf.

In January 2020, enforcement staff of the OCC filed the Notice of Charges against Mr. McLinko, Ms. Russ Anderson, and three other former Wells Fargo executives. By that action, the OCC seeks a total of $37.5 million in civil penalties as well as prohibition and cease-and-desist orders. *See* Notice of Charges at 2. The Notice of Charges alleges generally that "systemic sales practices misconduct [in the Community Bank] persisted for years due to the failures of Bank senior executives and failures in the checks and balances that were supposed to be provided by the Law Department and Audit." *Id.* at 7. These allegations stem from the sales practices that Accenture had investigated as part of the Engagement. *See, e.g.*, Notice of Charges ¶¶ 21–23, 68, 81, 83(c), 138, 215, 228, 257, 269, 274, 312, 315, 348.[2]

On April 27, 2020, Petitioners applied to Judge McNeil for the issuance of the Subpoena, which seeks documents related to Accenture's analysis of Community Bank sales practices.[3] Bruggebrew Decl. ¶ 3. The Subpoena contains 12 document requests seeking, among other things, documents relied upon by Accenture in preparing its analysis, documents setting forth its criteria and methodology in undertaking the analysis, and internal Accenture communications related to the analysis. *Id.*, Ex. A at 9–10. On April 28, 2020, Judge McNeil granted

---

[2] These paragraphs in the Notice of Charges cite to sections of the Board Report relying on the Accenture report.

[3] Although only Petitioners applied for the Subpoena, all five respondents in the OCC enforcement action will receive copies of and benefit from the documents produced by Accenture. Bruggebrew Decl. ¶ 14.

16779.001 4832-0053-4468.2    4    Case No.
**PETITION FOR ORDER REQUIRING COMPLIANCE WITH DOCUMENT SUBPOENA**

Respondents' application and issued the Subpoena (*id.*, Ex. A at 2), which was served on Accenture the next day. *Id.* ¶ 4.

On May 11, 2020, Accenture filed its Responses and Objections. Bruggebrew Decl. ¶ 5. Between May 15 and June 23, counsel for Petitioner and Accenture met and conferred several times about Accenture's objections. *Id.* ¶ 10. On June 2, Accenture indicated that it has "no central repository" of relevant documents. *See id.*, Ex. F at 13. In response, on June 3 Petitioners requested that Accenture determine "how internal documents relating to the engagement are stored at the Company," adding on June 4 that "[i]t would be helpful for us to understand what you've done to determine this, so that we can better understand your objections about the reasonableness of our requests and the burden on Accenture." *Id.*, Ex. F at 11, 13. Petitioners proposed a variety of search terms and suggested various custodians to whom document searches could be limited. *See id.*, Ex. F at 11. Petitioners also "agree[d] to limit [thei]r requests to internal communications and documents that Accenture did not send to or receive from Wells Fargo and that Wells Fargo therefore does not possess." *Id.*, Ex. F at 12. Petitioners accordingly withdrew Requests Nos. 1 and 8. *Id.*, Ex. D at 5 n.2.

On June 16, Accenture indicated that it had analyzed Petitioners' search terms as applied to 18 Accenture custodians and concluded that Petitioners' requests are not "justified." *Id.*, Ex. F at 7–8. Accenture then offered a "compromise position" to run four surnames—of the five respondents in *In re Tolstedt*—against six custodians' ESI. *Id.*, Ex. F at 8.

Petitioners responded that Accenture's proposal would

> not reasonably produce the documents responsive to our requests because the thrust of our requests is to obtain documents relevant to Accenture's report, including the accuracy of—and methodology used in developing—its factual findings relating to the scope and extent of sales practices misconduct in the Community Bank, the soundness of its authors' supporting analyses, and the reasonableness of their conclusions, all of which may be important at trial.

Bruggebrew Decl., Ex. F at 6. Petitioners asked for additional information relating to the identities of Accenture personnel and offered to pare down their search terms if Accenture would propose alternatives, noting that with "[Petitioners'] June 26 deadline to respond to [Accenture's] objections coming up, [Petitioners] want to be sure that we have enough time to try to reach agreement without

involving the Tribunal." Bruggebrew Decl., Ex. F at 6–7.

Seven days later, on June 23, Accenture reiterated its position that it would produce no documents in response to the Subpoena. It stated that Petitioner's requests were "untenable" and that Accenture would "rest on [its] position that [Petitioner's] subpoena was and remains an unduly burdensome effort to find information the relevance of which is attenuated at best." Bruggebrew Decl., Ex. F at 2. Accenture noted that Petitioners "should in the first instance exhaust efforts to find information through Wells Fargo," stating its belief that "Wells Fargo has all or virtually all the information [Petitioners] seek, and that [Petitioners] have not taken reasonable steps to determine whether or not that is correct." *Id.*, Ex. F at 3.[4]

On June 26, 2020, Respondents timely filed a response to Accenture's Responses and Objections, noting that "[t]he OCC's Uniform Rules of Practice and Procedure require any nonparty seeking relief from a subpoena to 'file a motion to quash or modify' (12 C.F.R. § 19.26(b)(1)) within 10 days of service of such subpoena," that Accenture had failed to file a motion to quash or modify the Subpoena, and that, having failed to timely file such a motion, Accenture had waived its objections by express operation of the applicable regulation. Bruggebrew Decl., Ex. D at 1–2 (citing 12 C.F.R. § 19.26(b)(2) (citing *id.* § 19.25(d)) & 12 C.F.R. § 19.25(d)(1) ("objections not made in accordance with [§ 19.25(d)(1)] and § 19.23 are waived")).

On July 7, 2020, Judge McNeil issued an order "find[ing] there is presently pending no motion seeking to have the subpoena quashed – but only Accenture's notice to Respondents McLinko and Russ Anderson explaining why it would not be producing documents that fall within the subpoena's scope." Bruggebrew Decl., Ex. E at 4. Judge McNeil then held that, "[a]ccordingly, no relief is warranted and none shall be forthcoming based upon Accenture's . . . Responses and Objections[.]" *Id.*, Ex. E at 4. In his Order, Judge McNeil noted that "the OCC's Rules prescribe the available course of action when it appears a subpoenaed entity fails to comply

---

[4] The Bank already has produced to Petitioners sufficient to have responded to a request for production seeking all documents relating to the Engagement. Bruggebrew Decl. ¶ 7. Petitioners have reviewed these documents (*id.*), which do not – indeed cannot – contain the relevant information sought from Accenture by the Subpoena because the documents sought from Accenture were by definition never in the Bank's possession.

with the subpoena issued to a non-party:"

> If a subpoenaed person fails to comply with any subpoena issued pursuant to this section or any order of the administrative law judge which directs compliance with all or any portion of a document subpoena, the subpoenaing party or any other aggrieved party may, to the extent authorized by applicable law, apply to an appropriate United States district court for an order requiring compliance with so much of the document subpoena as the administrative law judge has not quashed or modified.

Bruggebrew Decl., Ex. E at 3–4 (quoting 12 C.F.R. § 19.26(c)).

On July 20, 2020, counsel for Mr. McLinko asked whether Accenture would reconsider its refusal to produce any documents in response to the Subpoena so as to avoid the need to file this Petition. Bruggebrew Decl., Ex. G at 4–5. Citing Judge McNeil's order, Petitioners requested that Accenture "reconsider its position and comply with the Subpoena" and indicated that they otherwise would petition a United States district court as directed by Judge McNeil's order. *Id.*, Ex. G at 4–5 (citing 12 U.S.C. § 1818(n) and 12 C.F.R. § 19.26(c)). Accenture responded that it "d[id]n't understand" Petitioners' request. *Id.*, Ex. G at 4. Petitioners then offered "to engage in further meet-and-confer efforts if Accenture w[ould] stipulate that, if the Parties fail to reach agreement, our dispute will be resolved on [Petitioners'] petition under 12 U.S.C. § 1818(n)." *Id.*, Ex. G at 3. Accenture responded by filing with Judge McNeil a motion for leave to file a motion to quash.[5] *Id.* ¶ 13; *see id.*, Ex. I; *see also id.*, Ex. G at 1–2.

Pursuant to the Scheduling Order issued in *In re Tolstedt*, Petitioners are required to submit witness lists by August 4, 2020. The deadline to notice depositions is September 11, 2020. Bruggebrew Decl. ¶ 15.

## V. LEGAL STANDARD

"The Court's scope of inquiry in an agency subpoena enforcement proceeding is narrow." *NLRB v. Cable Car Advertisers, Inc.*, 319 F. Supp. 2d 991, 997 (N.D. Cal. 2004) (citing *NLRB v. North Bay Plumbing, Inc.*, 102 F.3d 1005, 1007 (9th Cir. 1996) (citing *EEOC v. Children's Hosp.*

---

[5] As noted above, Accenture has waived its objections and the administrative Tribunal has no jurisdiction to extend the statutory deadline by several months to allow Accenture to file a motion to quash now. Petitioners will oppose Accenture's newly filed motion and will supplement this Petition in the event that Judge McNeil rules on Accenture's motion.

*Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (*en banc*), *overruled on other grounds as recognized in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994))). "The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *North Bay Plumbing*, 102 F.3d at 1007 (quoting *Children's Hospital*, 719 F.2d at 1428).

Where a petitioner has established a *prima facie* case demonstrating these three factors, "the subpoena must be enforced unless the responding party can prove that the inquiry is unreasonable because it is unduly burdensome or overly broad." *Cable Car Advertisers*, 319 F. Supp. 2d at 997 (citing *North Bay Plumbing*, 102 F.3d at 1008 (citing *Children's Hospital*, 719 F.2d at 1428)). However, "[c]ourts 'generally will not entertain [such] a challenge to a subpoena that was not first brought before the [agency].'" *NLRB v. Uber Techs., Inc.*, 216 F. Supp. 3d 1004, 1007 (N.D. Cal. 2016) (quoting *NLRB v. Fresh & Easy Neighborhood Mkt., Inc.*, 805 F.3d 1155, 1159 (9th Cir. 2015) (citing *EEOC v. Cuzzens of Ga., Inc.*, 608 F.2d 1062, 1063 (5th Cir. 1979) ("Generally, one who has neglected the exhaustion of available administrative remedies may not seek judicial relief."))). In the Ninth Circuit, "a respondent's failure to exhaust preclude[s] the court from considering the respondent's merit-based challenges to the subpoena's validity." *Id.* (citing *Fresh & Easy*, 805 F.3d at 1162). Waiver of the exhaustion requirement is appropriate only "when the challenge to a subpoena is based on constitutional grounds or there are exceptional circumstances." *Id.*

## VI. ANALYSIS

A. **Petitioners Have Established a *Prima Facie* Case for an Order Compelling Accenture to Comply with the Subpoena**

Congress authorized "appropriate Federal banking agenc[ies]" to initiate hearings to prohibit institution-affiliated parties from participating in the conduct of the affairs of an insured depository institution (12 C.F.R. § 1818(e)(4)), to order such parties to cease and desist from violating certain laws and regulations or from engaging in unsafe or unsound practices (*id.* § 1818(b)), or to order such parties to forfeit and pay civil monetary penalties. *Id.* § 1818(i).

For national banking associations like Wells Fargo, the OCC is one such "appropriate Federal banking agency." *See id.* § 1813(q)(1)(A). Here, the Notice of Charges was, by its own terms, issued on behalf of the OCC pursuant to 12 C.F.R. § 1818(b), (e), and (i) (Notice of Charges at 1, 100), thereby initiating a hearing before an OFIA Administrative Law Judge. *See* 12 C.F.R. § 19.101. The Comptroller of the Currency appointed Judge McNeil to conduct the hearing initiated by the Notice of Charges (Bruggebrew Decl. ¶ 2), and Judge McNeil therefore had the authority to issue the Subpoena. 12 U.S.C. § 1818(n).

The procedural requirements have been followed. The OCC is "empowered to make rules and regulations with respect to any . . . proceedings" initiated pursuant to 12 U.S.C. § 1818. 12 U.SC. § 1818(n). Pursuant to that authority, the OCC along with the several other banking regulatory agencies promulgated the Uniform Rules of Practice and Procedure, codified at 12 C.F.R. subpart A, section 19.26 of which establishes the procedural requirements for parties seeking document subpoenas to nonparties in an OCC proceeding. *See* 56 Fed. Reg. 38024, 38024, 38035 (1991). On April 27, 2020, pursuant to 12 C.F.R. § 19.26(a)(1), Petitioners applied to Judge McNeil for the issuance of the Subpoena (Bruggebrew Decl. ¶ 3); Judge McNeil issued the Subpoena on April 28 (*id.*, Ex. A at 2); and on April 29 the Subpoena was served on Accenture. *Id.* ¶ 4; *see Children's Hospital*, 719 F.2d at 1428 ("(2) . . . the procedural requirements have been followed").

The documents required for production are relevant and material to the underlying administrative proceeding. Petitioners seek documents relating to Accenture's review—including notes, transcripts, or summaries of interviews, and its methodology and the bases and assumptions underlying its methodology—of sales practices at the Community Bank, *viz.*, conduct that stands at the center of the allegations presented in the administrative proceedings. *See, e.g.*, Notice of Charges ¶¶ 21–23, 68, 81, 83(c), 138, 215, 228, 257, 269, 274, 312, 315, 348; *see also supra* n.2). In sum, Accenture's work for Wells Fargo is relevant and material to the OCC's allegations, and the documents sought by the Subpoena are as well. *See Children's Hospital*, 719 F.2d at 1428 ("(3) . . . the evidence is relevant and material").

B.  **Because Accenture Failed to Exhaust Its Administrative Remedies, This Court Is Precluded from Considering Any Merit-Based Challenge to the Subpoena**

Ordinarily, once a *prima facie* case has been made, "the subpoena must be enforced unless the responding party can prove that the inquiry is unreasonable because it is unduly burdensome or overly broad." *Cable Car Advertisers*, 319 F. Supp. 2d at 997 (citing *North Bay Plumbing*, 102 F.3d at 1008). But because Accenture failed to seek the available administrative remedy by way of a motion to quash or modify the Subpoena, the Court may not consider any such challenge now.

Judge McNeil expressly found that Accenture did not file a motion to quash or modify the Subpoena. Bruggebrew Decl., Ex. E at 4 ("[T]here is presently pending no motion seeking to have the subpoena quashed – but only Accenture's notice to Respondents McLinko and Russ Anderson explaining why it would not be producing documents that fall within the subpoena's scope."). In failing to do so, Accenture failed to exhaust its administrative remedy. *See id.*, Ex. E at 4 ("Accordingly, no relief is warranted and none shall be forthcoming based upon Accenture's ... Responses and Objections."). Accenture's "failure to exhaust preclude[s] the [C]ourt from considering the respondent's merit-based challenges to the subpoena's validity." *See Uber*, 216 F. Supp. 3d at 1007 (citing *Fresh & Easy*, 805 F.3d at 1162).

The fact that Accenture filed objections to the Subpoena is insufficient to excuse the exhaustion requirement. *See Uber*, 216 F. Supp. 3d at 1010 (agreeing with "[o]ther courts [that] have held that raising objections without filing a petition to revoke [in the EEOC subpoena context] is insufficient to exhaust the administrative remedies"). Administrative exhaustion requires strict compliance with 12 C.F.R. §§19.26(b), 19.25(d), and 19.23. *See* 12 C.F.R. § 19.25(d)(1) ("objections not made in accordance with [§ 19.25(d)(1)] and § 19.23 are waived"). Twelve C.F.R. § 19.26(b)(2) provides that "[a]ny motion to quash or modify a document subpoena must be filed on the same basis ... upon which a party could object to a discovery request under § 19.25(d), and during the same time limits during which such an objection could be filed." (Emphasis added.). Section 19.25(d)(1) requires that objections be asserted only by way of a "motion in accordance with the provisions of § 19.23 to strike or otherwise limit the request" for documents. Section 19.23(a)(2), in turn, requires that "[a]ll written motions must state with

particularity the relief sought and must be accompanied by a proposed order."

Accenture met none of these requirements, as Judge McNeil found. *See* Bruggebrew Decl., Ex. E at 4. The analysis should end there, and this Court should compel Accenture's compliance with the Subpoena. *See Uber*, 216 F. Supp. 3d at 1007 (citation omitted).

While "[c]ourts have waived the exhaustion requirement when the challenge to a subpoena is based on constitutional grounds or there are exceptional circumstances, neither of [these grounds] is present here."[6] *Uber*, 216 F. Supp. 3d at 1007 (citations omitted) (finding that Uber failed to exhaust its administrative remedies and granting NLRB's application to enforce subpoenas). *Uber* is instructive. There, the court addressed *EEOC v. Lutheran Social Services*, 186 F.3d 959 (D.C. Cir. 1999), which found that exceptional circumstances warranted excusing the failure to exhaust. In contrast, *Uber* found, under circumstances nearly identical to those presented in this Petition, that no exceptional circumstances existed that would support an exception to the exhaustion requirement. As in *Uber*, Accenture was advised of the applicable regulations (indeed it cited those regulations in its response), and the administrative Tribunal is familiar with the subject matter and context of the administrative proceedings and is best positioned to consider the proper scope and relevance of the materials called for by the Subpoena. *See Uber*, 216 F. Supp. 3d at 1007–09, Bruggebrew Decl., Ex. A at 1 (citing 12 C.F.R. § 19.26), and *id.*, Ex. B at 19 (same); *compare Lutheran Social Services*, 186 F.3d at 964 (agency subpoena neither advised Lutheran of its deadline to object nor "point[ed] to the regulation that sets forth this requirement," and the agency investigator may have misled Lutheran as to deadline) and 965 (finding no benefit from requiring exhaustion where agency had no expertise in asserted basis of objection).

Nothing here warrants an exception to the exhaustion requirement.

C. **The Subpoena Is Reasonable**

Even were the Court to conclude that "exceptional circumstances" exist so as to excuse

---

[6] In the nearly 12 weeks since it was served with the Subpoena, Accenture has never raised any constitutional objections. *See* Bruggebrew Decl., Ex. B.

Accenture's waiver, the Court still should require Accenture's compliance. Accenture bears the burden to prove that the Subpoena is unduly burdensome or overly broad. *Cable Car Advertisers*, 319 F. Supp. 2d at 997 (citing *North Bay Plumbing*, 102 F.3d at 1008). "A recitation that the discovery request is 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." *Fosselman v. Caropreso*, No. C 09-0055 PJH PR, 2011 WL 999549, at *4 (N.D. Cal. Mar. 18, 2011) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)). "The party resisting discovery must instead show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* (citations and internal quotation marks omitted, brackets in original).

In the underlying proceedings, Accenture asserted exactly the type of undifferentiated, boilerplate objections prohibited by federal courts. *See, e.g.*, Bruggebrew Decl., Ex. B at 6–7 ("Accenture restates and incorporates by reference its privilege,[7] undue burden, redundancy, proportionality and overbreadth objections to the entire Subpoena, as well as its objections to the Subpoena's definitions and instructions."). The Subpoena is neither unduly burdensome nor overly broad, and Accenture should be compelled to provide the documents as required by the

---

[7] Accenture raises a general attorney-client privilege objection to all of the Requests. In doing so Accenture claims to assert the Bank's privilege. *See* Bruggebrew Decl., Ex. B at 2. But Accenture cannot assert an attorney-client privilege that it does not hold; only the privilege holder can assert its privilege. *See, e.g.*, *Henderson v. United States*, 815 F.2d 1189, 1192 (8th Cir. 1987) (attorney-client communications properly admitted because "the attorney-client privilege belongs to and exists solely for the benefit of the client" and third party "lacks standing to object"). If the Bank had intended to assert the privilege over particular documents, it should have intervened do so. *See Kleiman v. Wright*, No. 18-CV-80176, 2020 WL 1849407, at *7 (S.D. Fla. Apr. 13, 2020) (holding that privilege was waived where "third-party entities did not intervene to assert privilege" and "Defendant lacked authority to assert privilege on behalf of these entities"); *see also United States v. Smith*, 454 F.3d 707, 713 (7th Cir. 2006) (finding government cannot assert attorney-client privilege on behalf of another party) (collecting cases). In any event, it is clear that the Bank does not intend to assert its privilege. The Bank is well aware of the subpoena issued to Accenture and has not sought to intervene. Bruggebrew Decl., Ex. F at 9–10. To the extent that Accenture purports to assert the attorney work-product privilege, that objection fails as well because that privilege is "personal to the attorney." *In re Vargas*, 723 F.2d 1461, 1466 (10th Cir. 1983). Regardless, Accenture's privilege objections provide no basis to quash or modify the Subpoena. Bruggebrew Decl., Ex. H ¶ 12 ("The production in this proceeding of any document containing any information over which the Bank claims privilege shall not constitute a waiver of such privilege in this or any other proceeding. *See* 12 U.S.C. § 1828(x). The parties are permitted to use in this proceeding (and solely for purposes of this proceeding) documents that include information over which the Bank claims privilege.").

subpoena issued by Judge McNeil.

## VII. CONCLUSION

This Court should issue an order requiring Accenture's compliance with Requests Nos. 2–7 and Nos. 9–12 of the Subpoena, limited to internal communications and documents that Accenture did not send to or receive from Wells Fargo.

DATED: July 21, 2020

Respectfully submitted,

COBLENTZ PATCH DUFFY & BASS LLP

By: /s/ Timothy P. Crudo
TIMOTHY P. CRUDO
Attorneys for Petitioner Paul McLinko

COLEMAN & BALOGH LLP

By: /s/ Ethan A. Balogh
ETHAN A. BALOGH

KELLEY, WOLTER & SCOTT, P.A.

By: /s/ Brett D. Kelley
BRETT D. KELLEY
Attorneys for Petitioner Claudia Russ Anderson

## VIII. CIVIL LOCAL RULE 5-1(I)(3) CERTIFICATION

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from the other Signatories.

DATED: July 21, 2020

Respectfully submitted,

COBLENTZ PATCH DUFFY & BASS LLP

By: /s/ Timothy P. Crudo
TIMOTHY P. CRUDO
Attorneys for Petitioner Paul McLinko